Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343

Daniel G. Shay (SBN 250548)
DanielShay@TCPAFDCPA.com
**LAW OFFICE OF DANIEL G. SHAY**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAMRAN MORADI,<br><br>　　　Plaintiff,<br><br>vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC, & TRANS UNION, LLC<br><br>　　　Defendants. | Case No.: **'22CV0887 GPC AGS**<br><br>COMPLAINT FOR VIOLATIONS OF THE:<br><br>(1) FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ.<br><br>JURY TRIAL DEMANDED |

1

Complaint

## INTRODUCTION

1. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq, to promote fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA imposes duties on consumer reporting agencies and anyone that provides information to those agencies.

2. Kamran Moradi ("Plaintiff") brings this action to challenge the conduct of Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union"), (collectively "Defendants") with regard to Defendants continued inaccurate credit reporting.

3. Plaintiff makes these allegations based on personal knowledge and investigation conducted by Plaintiff's attorneys.

4. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

5. Any violations by each Defendant were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

6. Unless otherwise indicated, the use of a Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors,

assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

## JURISDICTION AND VENUE

7. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, and 15 U.S.C. § 1681p.
8. This action arises out of Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq.
9. Because Defendants conduct business within the State of California, personal jurisdiction is established.
10. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides within this judicial district, (ii) the conduct complained of herein occurred within this judicial district and (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES & DEFINITIONS

11. Plaintiff is a natural person who resides in San Diego County and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).
12. Equifax is an LLC headquartered in Georgia that does business in San Diego County and is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).
13. Trans Union is an LLC headquartered in Illinois that does business in San Diego County and is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).
14. Defendants are "person[s]" as defined by 15 U.S.C. § 1681a(b).
15. The causes of action herein pertain to Plaintiff's "consumer report" under 15 U.S. Code § 1681a(d), in that inaccurate representations of Plaintiff's credit worthiness, credit standing and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among

other things, credit to be used primarily for personal, family, household and employment purposes.

### FACTUAL ALLEGATIONS

16. On or around December 21, 2016, Plaintiff purchased a Mercedes Sprinter Van (the "Van") and obtained financing through Mercedes-Benz Financial Services ("MBFS").

17. Under the loan agreement, Plaintiff was obligated to make sixty (60) monthly payments that were due on the 20th day of each month. The final payment was scheduled to take place on December 20, 2021.

18. At or around the time, Plaintiff purchased the Van, Plaintiff enrolled in MBFS automatic payment program, and each month MBFS withdrew Plaintiff's loan payment from Plaintiff's Wells Fargo bank account.

19. For fifty-nine (59) consecutive months, beginning on December 21, 2016, through November 20, 2021, MBFS withdrew Plaintiff's payments and applied the payments to Plaintiff's MBFS loan.

20. However, on December 20, 2021, MBFS failed to take Plaintiff's final payment as MBFS had done for every other payment during the life of the loan.

21. On or around February 13, 2022, Plaintiff requested Plaintiff's Equifax and Trans Union consumer reports.

22. To Plaintiff's shock and disappointment, Plaintiff discovered that MBFS inaccurately reported to Defendants that Plaintiff was thirty (30) days late even though it was MBFS who failed to withdraw Plaintiff's automatic payment on December 20, 2021.

23. Prior to Defendants inaccurate reporting of the MBFS tradeline, Plaintiff's credit reports did not contain any negative remarks and Plaintiff's credit score was nearly perfect.

///

///

24. Plaintiff was distraught to discover that the inaccurate information on Plaintiff's credit report caused Plaintiff's credit score to decrease by approximately 100 points.
25. On or around February 18, 2022, Plaintiff mailed written dispute communications to Equifax and Trans Union, Pursuant to 15 U.S.C. § 1681i(a).
26. Plaintiff's disputes contained sufficient identifying information for Equifax, and Trans Union to locate the inaccurate MBFS account.
27. Such identifying information included Plaintiff's name, date of birth, phone number, last four digits of Plaintiff's social security number, California driver's license number, address, credit report file number, the disputed MBFS tradeline with the partial account number as it appeared on Plaintiff's Equifax and Trans Union consumer reports. Plaintiff also signed the disputes and attached a copy of Plaintiff's California driver's license.
28. Additionally, Plaintiff attached to the dispute, a copy of the MBFS payment schedule, and a copy of Plaintiff's Wells Fargo account demonstrating that MBFS failed to withdraw the final payment even though Plaintiff was ready and willing to remit the final auto payment.
29. Plaintiff's disputes informed Defendants that the tradeline being reported was inaccurate and explained Plaintiff's basis for this belief. Specifically, that Plaintiff authorized MBFS to automatically withdraw Plaintiff's monthly loan payment from Plaintiff's Wells Fargo account and that MBFS failed to do so on December 20, 2022.
30. Plaintiff's dispute explicitly established the need for Equifax and Trans Union to conduct an investigation into the disputed MBFS tradeline on Plaintiff's consumer credit report pursuant to 15 U.S.C. § 1681i.
31. On or around March 3, 2022, Plaintiff received notice from Equifax, communicating to Plaintiff that the disputed MBFS account had been verified as

accurate demonstrating that Equifax failed to conduct a reasonable investigation pursuant to 15 U.S.C. § 1681i.

32. On or around March 4, 2022, Plaintiff received notice from Trans Union, communicating to Plaintiff that the disputed MBFS account had been verified as accurate demonstrating that Equifax failed to conduct a reasonable investigation pursuant to 15 U.S.C. § 1681i.

33. Equifax and TransUnion did not provide notice to Plaintiff that Plaintiff's dispute was "frivolous or irrelevant" under 15 U.S.C. § 1681i(a)(3).

34. Despite receipt of information to the contrary, Defendants have verified the inaccurate credit reporting.

35. Defendant's investigations, if any, were completely and totally ineffective and unreasonable.

36. As a result of Defendants faulty investigations, Defendants failed to determine that the inaccurate information MBFS furnished could not be verified as accurate.

37. Plaintiff's continued efforts to correct Defendants' erroneous and negative credit reporting were fruitless.

38. Defendants continued to report inaccurate and negative information in light of Defendants' knowledge of the error demonstrating that Defendants' conduct was willful or at least reckless at a minimum.

39. Defendants' failure to correct inaccuracies on Plaintiff's credit reports was intentional or in reckless disregard of Defendants' duty to refrain from reporting inaccurate information.

40. Accordingly, Defendants' willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's disputes.

41. Defendants' inaccurate and negative reporting damaged Plaintiff's credit score and creditworthiness.

42. Plaintiff has spent hours dealing with this inaccurate information and provided all information needed for the investigations.

43. While Plaintiff was thorough in Plaintiff's disputes, each Defendant failed to consider any of the specifics identified and described in Plaintiff's disputes.
44. Plaintiff's anxiety, frustration, stress, lack of sleep, nervousness and embarrassment continues to this day because the inaccurate information mischaracterizes Plaintiff and significantly harms Plaintiff's credit score.
45. As a direct and proximate result of Defendants' willful action and inaction, Plaintiff has suffered actual damages, including but not limited to, time spent reviewing credit reports, preparing, and mailing dispute letters, attorney fees, loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, mental and emotional stress and anguish, humiliation, and embarrassment. Plaintiff has spent countless hours and suffered in attempting to correct Defendants' inaccurate and derogatory information, without success.
46. Similarly, Equifax and Trans Union received documents in connection with Plaintiff's disputes that directly contradicted the inaccurate credit reporting. These documents should have caused Equifax and Trans Union to remove the inaccurate information from Plaintiff's credit reports.
47. By intentionally reporting negative information, Defendants acted in conscious disregard for Plaintiff's rights.
48. To report negative information after receipt of Plaintiff's disputes demonstrates that Defendants took action involving an unjustifiably high risk of harm that was either known or so obvious that it should be known.
49. Since Plaintiff's dispute efforts were unsuccessful, Plaintiff was forced to bring this action to seek satisfaction from the harm Defendants conduct caused.
50. Based upon the discussion above, Plaintiff contends that punitive damages are appropriate here.

///
///
///

## CAUSES OF ACTIONS
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681 ET SEQ.

51. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

52. The foregoing acts and omissions constitute numerous and multiple violations of the Fair Credit Reporting Act ("FCRA").

53. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1) and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from each Defendant.

54. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages and statutory damages of $1,000 and such amount as the court may allow pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each Defendant for:

- FCRA - An award of any actual damages, in an amount to be determined at trial and statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A) against Defendants for each incident of willful noncompliance of the FCRA;

- FCRA - An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendants for each incident of willful noncompliance to the FCRA;

- FCRA - An award of any actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA;

- FCRA - An award for costs and reasonable attorney fees, pursuant to 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(2) against Defendants for each incident

of noncompliance of the FCRA;

- General damages according to proof;
- Special damages according to proof;
- Punitive damages according to proof;
- For equitable and injunctive relief;
- Any other relief the Court deems just and proper.

### TRIAL BY JURY

55. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Date: June 17, 2022        SWIGART LAW GROUP, APC

By: *s/ Joshua B. Swigart*
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com
Attorney for Plaintiff